LENA MOLKENBUR v. HUGH A. SALMON AND OTHERS.[1]

July 25, 1924.

No. 23,926.

**Location of corner by trial court sustained.**

> From a consideration of the record and evidence in this case, *held* that the findings made by the trial court as to the northwesterly corner of lot 15 in controversy, are warranted by the proofs.

Action in the district court for Ramsey county to determine boundary line. The case was tried before Hanft, J., who made findings and ordered judgment in favor of plaintiff. From an order denying defendants' motion for a new trial, defendants appealed. Affirmed.

*Charles H. Winter,* for appellants.

*Cowern & Jesmer* and *G. Winthrop Lewis,* for respondent.

QUINN, J.

This is an action to have the boundary line between lots 14 and 15, block 2, of Bellaire, established under the provisions of sections 8095, 8096, G. S. 1913. Bellaire consists of a tract of land in Ram-

[1]Reported in 199 N. W. 966.

sey county, bordering on White Bear lake. It was surveyed, platted and designated as Bellaire in October, 1906. The plat was duly filed in the office of the register of deeds, and shows the tract to be divided into three blocks, numbered 1, 2 and 3. Block 2 is bounded on the north and northeast by a winding street, designated on the plat as *Simonton Boulevard,* and on the south and southwest by the right-of-way of the Minneapolis and St. Paul Suburban Railway. This block when platted was divided into acre lots and numbered from 1 to 21 consecutively from west to east. The matter in controversy is the proper location of the line between lots 14 and 15.

The survey of Bellaire was made and the plat prepared by a surveyor named McAdam, who is now deceased. The witness F. J. Armstrong was at the time an employe in the office of the county surveyor of Ramsey county. He assisted McAdam as chain man in making the survey, and in placing the monuments and corner stakes. Before the plat was filed, Armstrong checked up the lines for his father, J. H. Armstrong, who was then county surveyor, and then tied in the corner stakes, including the one at the corners in controversy. The plat was then filed with a certificate thereon as follows:

"I hereby certify that I have made all the necessary surveys to determine the accuracy of the annexed plat and find that the monuments, for the guidance of future surveys, have been correctly shown on the plat.

J. H. Armstrong, County Surveyor."

F. J. Armstrong testified at the trial in effect that he had been engaged in the work of civil engineering all his life; that he assisted in laying out Bellaire in 1906; that he did the chaining, rodding, lining in the stakes, and that he drove practically all the corner stakes; that they were all oak stakes, machine pointed exactly like Exhibit 2; that he put a hub stake at the corners separating lots 14 and 15, and about a month later tied it in with witness marks on permanent objects, such as oak trees or telephone poles; that he made notes of such tying in and turned them in to the county surveyor's office at the time.

The witness Lyons testified that as deputy county surveyor he had charge of the staking out, widening and grading of Simonton Boulevard in 1912; that in so doing he found enough of the original stakes to enable him to locate the southerly line of the boulevard; that after consulting some old notes, he located an oak stake at or near where the northwesterly corner of lot 15 should be; that such stake was in a clump of oak trees; that the top of it was partially burned off; that he measured south from such stake about 28.85 feet and put in an iron stake on the southerly line of the boulevard as widened; that he placed the iron stake within at least a very few inches of the line between lots 14 and 15; and that in grading the boulevard there was a considerable fill at the point where the original stake was found.

There is no controversy as to the true location of the southwesterly corner of lot 15. That corner is agreed upon. Mr. Palmer testified that he was called out to Bellaire in 1914 to subdivide lots 12, 13 and 14; that they were widening the boulevard; that Mr. Lyons was in charge as engineer; that he consulted with Mr. Lyons and that Mr. Lyons placed an iron stake on the line between lots 14 and 15, where that line would intersect the southerly line of the boulevard as widened; that he then went to the southwestern corner of lot 15, on the line of the railway right-of-way, found the original stake and ran the line from that corner to the iron stake set by Lyons, then on about 28.85 feet to where it would intersect the old line of the boulevard, where he dug down and found the old oak stake; that it was partly burned off; that the boulevard had been partly filled in and the stake was covered about 15 inches; that he replaced it and tied it in with witness marks placed on a telephone pole near by; that the witness marks are still there and that the spot where he found the stake was practically in the center of the boulevard as graded; that he had occasion to go out there later to look at the pine stake Exhibit 1; that he found it exactly where Mr. Fowble says he found it, which was about 7 feet from where the oak stake was; that McAdam apparently made a mistake on his map, or in his calculation of angles or measurements, which was discovered soon after the McAdam survey; that, instead of a right

angle at the southwesterly corner of lot 15, the plat was in error about 33 minutes, which would make a difference of about 6 feet at the northwesterly corner of the lot; that when making the survey McAdam was given strict orders not to cut any trees or brush, making it necessary for him to calculate his measurements, some of which did not check, so he (Armstrong) went out and did the work over again.

We have gone into the showing made at the trial in support of the contention as to the location of the true original stake, set at the northwesterly corner of lot 15, in the survey of 1906, as bearing upon the probability or improbability of a lost corner. The testimony of both Armstrong and Lyons was corroborated by other witnesses. It may be further stated that we find no apparent effort on the part of any of the men who took part in making the several surveys, to avoid the truth as to the matter in controversy.

Mr. Fowble's testimony as to the plan adopted by him in making his survey and locating the line in dispute is frank and clear. He had been a surveyor between 40 and 50 years, was employed by the plaintiff or her husband in 1921 to make a survey and plat of lot 15. He testified that his survey was based upon information received from Mr. Jens Pederson; that Mr. Pederson had made a survey and subdivision of lot 16; that after talking with Pederson he went and found an iron stake at the southeasterly corner of lot 15 which he accepted as the corner; that in completing his survey he measured from that iron stake, following the distances and directions shown on the original map made by McAdam; that, in trying to locate the northwesterly corner of lot 15, he worked on two bases—first that the length of the lot as shown on the map was right and that the distance across was in error; and, second, that the front measurement, 143 feet plus, was correct and that the length of the lot as shown on the plat was in error; that the plat was impossible; that both figures could not be correct unless the angle was wrong; that, assuming the length of the lots to be correct and the width in error, he located a temporary corner at a point in the boulevard on the line between lots 14 and 15 according to the distances shown on the original plat and there

put a nail in the ground; that he then caused a trench to be dug along the line to the nail or temporary corner, where he dug down and found a small pine stake two feet beneath the surface which he accepted as the original corner of the lot.

Jens Pederson surveyed and divided lot 16 into residential lots in 1908. At that time Bellaire was a mere wilderness covered thickly with trees and underbrush. Simonton Boulevard was a winding unimproved street 40 feet in width. Mr. Pederson testified that in surveying lot 16 he found a stake at each corner of the lot similar to the oak stake Exhibit 2, as he remembered them; that they were like the stakes generally used in surveying additions; that he did not go to any government monument in making his survey; that, when Mr. Fowble interviewed him concerning the matter, he merely gave him the angles and distances. Mr. Molkenbur, plaintiff's husband, testified in corroboration of Mr. Fowble's testimony. It was conceded by counsel at the trial that, if the Pederson survey were correct, then the Fowble survey was also correct.

It appears from the proofs that the plat prepared and filed by McAdam as representing his survey, is impossible and in error as explained by the witnesses testifying on behalf of both sides. The testimony given by the man who set the stakes in the McAdam survey is positive that the stakes there used were oak stakes. His testimony is corroborated but not disputed. Some of the witness marks used in tying in the corner are still in existence. The distance between the two corners as contended for is about 7 feet, the two lines coming together at the corner on the right-of-way at the southwesterly corner of lot 15. There was competent testimony as to the location of the original stake as placed in the McAdam survey. The original stake, if located, must control as against courses and distances shown on the plat. A majority of the court are of the opinion and hold that the conclusions arrived at by the learned trial court are warranted by the record and that there should be an affirmance. The writer is of the opposite opinion.

Affirmed.

DIBELL, J. (concurring.)

I concur in the result. The ultimate question is one of fact. Molkenbur, the husband of the plaintiff, testifies that he found the four corner stakes in 1907. His testimony is corroborated by that of his wife. It is supported by the testimony of Munson who was present when Molkenbur was getting the location of the plaintiff's lot, and who cut out the trees from Chester Lane which was 16 feet wide on the easterly side of lot 15. The finding of the trial court is sustained.

It may be unfortunate that the witnesses whose proposed testimony is the basis of the motion for a new trial upon the ground of newly discovered evidence were not at hand at the trial. But whether a new trial should have been granted so that such testimony might be produced was for the trial court and there is nothing to indicate that its discretion was not wisely exercised.

STONE, J. (concurring.)

I concur in the result. The case was so carefully tried below; there was so much conflict in the evidence and so much of it in support of the decision under review that a reversal or another trial is not permissible.